**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ULYSSES CAGE,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:25-CV-02393-JDA<br><br>MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Ulysses Cage ("Mr. Cage") seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 5). For the reasons set forth below, the Court REVERSES the Commissioner's final decision and REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

## II. PROCEDURAL HISTORY

On December 8, 2023 and December 11, 2023, Mr. Cage filed his applications for DIB and SSI respectively. (Tr. 232, 238). Mr. Cage's applications related to his Crohn's disease and ulcerative colitis. (Tr. 263).

The Social Security Administration ("SSA") denied Mr. Cage's applications initially and upon reconsideration. (Tr. 60-61, 78, 86). Mr. Cage requested a hearing before an administrative

law judge ("ALJ"). (Tr. 145). The ALJ held a hearing on October 29, 2024, at which Mr. Cage was represented by counsel. (Tr. 34). Mr. Cage testified, as did an impartial vocational expert ("VE"). On November 21, 2024, the ALJ issued a written decision, finding that Mr. Cage was not disabled. (Tr. 14). The ALJ's decision became final on September 9, 2025, when the Appeals Council declined further review. (Tr. 1).

On November 5, 2025, Mr. Cage filed his complaint, challenging the Commissioner's final decision. (ECF No. 1). Mr. Cage asserts the following assignment of error:

(1) The ALJ's RFC determination is the product of legal error because the ALJ failed to properly evaluate Plaintiff's subjective complaints pursuant to SSR 16-3p and 20 C.F.R. §§ 404.1529, 416.929, leaving the Court unable to proceed to a substantial evidence review.

(ECF No. 9, PageID # 476).

## III. BACKGROUND

### A. Personal, Educational, and Vocational Experience

Mr. Cage was born in 1973 and was 50 years old on the alleged onset date. (Tr. 232). He has a high school diploma. (Tr. 264). Mr. Cage and his wife are separated. (Tr. 40). He does not have any minor children. (Tr. 233). Mr. Cage has prior work experience as a delivery worker and a cleaner – housekeeper. (Tr. 26).

### B. Relevant Hearing Testimony

#### *1. Mr. Cage's Testimony*

Mr. Cage testified that he works approximately two and a half hours per day driving students to school. (Tr. 41). On a typical day, he gets ready for work and takes Motrin for lower back pain. (Tr. 43). Mr. Cage testified that he helps around the house as much as he can, including cleaning the house, raking the leaves, and cooking. (Tr. 43-44). Mr. Cage also testified that he is able to clean for approximately 30 minutes before needing to rest. (Tr. 44). He cannot mow the lawn. *Id*. Mr. Cage further testified that he does some grocery shopping but less than he used to.

*Id*. Mr. Cage testified that he walks for several blocks at night with a dog but does not have other hobbies. *Id*.

Mr. Cage testified that he is unable to work because he cannot stand or sit for more than 30 minutes before he has pain in his lower back. (Tr. 45, 51). He also testified that he uses a heated pad on his back to ease the pain. (Tr. 52). Mr. Cage further testified that he uses an ostomy bag and is not always aware of the bag filling up and that he is constantly in the bathroom dumping the bag. *Id*. He said that he was laid off from his last job because he kept calling in sick or going to the bathroom. *Id*. Mr. Cage testified that he changes his ostomy bag every other week and that the bag will sometimes come off. (Tr. 46). Mr. Cage further testified that he may need a second surgery to remove the bottom of his colon. (Tr. 49-50).

Mr. Cage testified that he has flare-ups approximately five times per month, which cause cramps and burning on his right side. (Tr. 47-48). He further testified that the flare-ups last between a few hours and a day. (Tr. 48). When he experiences a flare-up, he needs to alternate positions to alleviate the pain. (Tr. 51).

*2.* ***Vocational Expert's Testimony***

The ALJ asked the VE to consider a hypothetical individual with Mr. Cage's age, education, and prior work experience who could perform work at the light exertional level and who could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, crouch, and crawl; and never work on unprotected heights or near dangerous moving machinery. (Tr. 55). The VE testified that the individual could perform Mr. Cage's past work as a cleaner, both as actually and generally performed. (Tr. 56). The VE also testified that the hypothetical individual could perform jobs existing in significant numbers in the national economy, including work as a marker; mail clerk; or inspector, hand packager. *Id*.

In response to a question from Mr. Cage's counsel, the VE testified that the hypothetical

individual could not perform Mr. Cage's past relevant work if the individual could only stand for four hours in an eight-hour workday. (Tr. 57). However, the VE also testified that the hypothetical individual could perform work as a mail clerk even with that limitation. *Id*.

**C. Relevant Opinion Evidence**

***1. State Agency Medical Consultants***

On February 24, 2024, Elizabeth Das, M.D., a state agency medical consultant, opined that Mr. Cage could perform work at the light exertional level and could sit and stand or walk for approximately six hours in an eight-hour workday. (Tr. 66). Dr. Das also opined that Mr. Cage could occasionally climb ramps or stairs, stoop, crouch, or crawl. *Id*. Dr. Das further opined that Mr. Cage could never climb ladders, ropes, or scaffolds, and must avoid all exposure to unprotected heights and hazardous machinery. (Tr. 66-67). On May 2, 2024, Dr. Gerald Kylop affirmed Dr. Das' findings on reconsideration. (Tr. 83).

**D. Relevant Medical Evidence**

On September 26, 2023, Mr. Cage went to the Cleveland Clinic Express Clinic, complaining of left arm pain, which he said had been worsening over the past two to three months. (Tr. 393). Mr. Cage denied any pertinent spinal history, but said he had screws in his left elbow from an injury he experienced when he was 12 years old. *Id*. On examination, Mr. Cage was positive for arthralgias, but negative for back pain, gait problems, swelling of the joints, myalgias, neck pain, and neck stiffness. (Tr. 394-95). He had normal range of motion in his left elbow, and he did not show swelling, effusion, deformity, or laceration. (Tr. 395). He was diagnosed with left elbow pain and instructed to take Tylenol and ice as necessary. (Tr. 396).

On February 20, 2024, Mr. Cage underwent a consultative examination in connection with his disability claim. (Tr. 423). On examination, he demonstrated full strength in all muscle groups, full grip strength, full range of motion, and a normal gait. (Tr. 424-28). An x-ray of his lumbar

spine revealed lumbosacral arthritis, no acute process, and normal alignment. (Tr. 429). The examiner noted that Mr. Cage had ulcerative colitis and Crohn's disease, which he was diagnosed with 21 years previously. (Tr. 430). The examiner further noted that Mr. Cage's entire large intestine was removed in 2009 and that he had an ileostomy. *Id*. Mr. Cage reported flares every two weeks, consisting of stomach cramps, fatigue, and anorexia. *Id*. He was positive for weight loss, fatigue, abdominal pain, and depression. *Id*. The examiner opined that Mr. Cage had Crohn's disease with ileostomy, comorbid with degenerative joint disease of the lumbar spine without radiculopathy. (Tr. 431).

## IV. THE ALJ'S DECISION

The ALJ first determined that Mr. Cage met the insured status requirements of the Social Security Act through September 30, 2026. (Tr. 19). The ALJ further determined that Mr. Cage had not been engaged in substantial gainful activity since April 15, 2023, the alleged onset date. *Id*.

The ALJ next determined that Mr. Cage had the following severe impairments: spine disorders; inflammatory bowel disease; and other gastrointestinal disorders. *Id*. The ALJ found, however, that none of Mr. Cage's severe impairments, whether considered singly or in combination, met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

The ALJ next determined that Mr. Cage had the residual functional capacity ("RFC") to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, crouch, and crawl; and never work at unprotected heights or with dangerous moving machinery.

(Tr. 22).

The ALJ next found that Mr. Cage could perform his past relevant work as a cleaner – housekeeping, both as actually and generally performed. (Tr. 25). In the alternative, the ALJ determined that Mr. Cage could perform jobs that existed in significant numbers in the national

economy, including work as a marker; mail clerk; or inspector, hand packager. (Tr. 26-27). Accordingly, the ALJ determined that Mr. Cage was not disabled. (Tr. 28).

## V. LAW & ANALYSIS

### A. <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA

fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.”).

Finally, a district court cannot uphold an ALJ’s decision, even if there “is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.” *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

**B. <u>Standard for Disability</u>**

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage “in substantial gainful activity by reason of any medically determinable physical or mental impairment,” or combination of impairments, that can be expected to “result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.” 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec’y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[1]

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that he is not currently engaged in “substantial gainful activity” at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a “severe impairment” in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A “severe impairment” is one that “significantly limits . . . physical or mental ability to do basic work activities.” *Abbott v. Sullivan*,

[1] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq*. The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq*., corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbott*, 905 F.2d at 923.

**C. <u>Analysis</u>**

In his sole assignment of error, Mr. Cage argues that the ALJ failed to apply proper legal standards because the ALJ did not analyze the relevant factors when considering Mr. Cage's subjective complaints. Mr. Cage's argument is well-taken.

Social Security Ruling ("SSR") 16-3p provides that the SSA will conduct a two-step process in considering a claimant's symptoms. 2017 WL 5180304, at *3 (Oct. 25, 2017). At step one, the SSA determines whether the individual has one or more medically determinable impairments that could reasonably be expected to produce the individual's alleged symptoms. *Id.* If so, at step two, the SSA evaluates the intensity and persistence of a claimant's symptoms, such

as pain, to determine the extent to which those symptoms limit the claimant's ability to work. *Id.* at *4.

With respect to a claimant's subjective statements, SSR 16-3p provides that the SSA will "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms" and "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.* at *6. SSR 16-3p identifies seven factors that the SSA will consider in evaluating an individual's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment an individual receives or has received other than medication; (6) any measures other than treatment an individual uses or has used; and (7) any other factors concerning the claimant's functional limitations and restrictions. *Id.* at *7-8. "The ALJ need not analyze all seven factors but should show that she considered the relevant evidence." *Phillips v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-01144-JGC, 2023 WL 4078204, at *8 (N.D. Ohio Apr. 4, 2023), *report and recommendation adopted*, 2023 WL 5602726 (N.D. Ohio Aug. 30, 2023).

Notably, governing regulations provide that an ALJ may not "reject [a claimant's] statements about the intensity and persistence of [the claimant's] pain or other symptoms or about the effect [the claimant's] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2). "To emphasize – an ALJ *must* consider [the SSR 16-3p] factors *in addition* to the objective medical evidence in assessing Plaintiff's credibility." *Acosta Padilla v. Comm'r of Soc. Sec.*, No. 1:17 CV 2256, 2018 WL 7079491, at *7 (N.D. Ohio Dec. 7, 2018), *report and recommendation adopted sub nom.*, 2019 WL 315035 (N.D. Ohio Jan. 23, 2019).

"It is for the administrative law judge, not the reviewing court, to judge the consistency of

a claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020). An ALJ's consistency determination "must be accorded great weight and deference . . . ." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004). However, while determinations regarding subjective complaints rest with the ALJ, "those determinations must be reasonable and supported by substantial evidence." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *see also Kurman v. Comm'r of Soc. Sec.*, No. 1:20-cv-01837, 2022 WL 765072, at *3 (N.D. Ohio Mar. 14, 2022) ("The ALJ's decision . . . must be rooted in the record and must contain specific reasons for the weight given to the [claimant's] symptoms.") (quotations omitted).

Mr. Cage is correct that the ALJ did not properly apply those standards here. The ALJ included the boilerplate statement that Mr. Cage's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 23). The ALJ similarly stated that "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of the claimant's symptoms, they are not entirely consistent with the medical evidence of record as discussed below." *Id*.

Next, the ALJ stated that he "considered other factors," and cited to the seven factors set forth in SSR 16-3p. *Id*. The ALJ then went on to analyze Mr. Cage's subjective complaints as follows:

> In this case, although the medical evidence documented the existence of impairments that could reasonably be expected to produce a certain degree of symptoms, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration, or severity as to reduce the claimant's residual functional capacity or to preclude all work activity on a continuing and regular basis. Bearing this in mind, I find that restricting the claimant to performing the range of work described above adequately addresses the location, duration,

frequency, and intensity of the claimant's alleged symptoms as well as precipitating and aggravating factors. The claimant's testimony and allegations are not entirely consistent with the record as a whole.

*Medical Evidence of Physical Impairments*

The record supports that the claimant has experienced functional limitations related to spine disorders; inflammatory bowel disease; and other gastrointestinal disorders. Treatment records indicate that the claimant did not report pertinent positive spinal history on one occasion (2F/33). He denied loss of passive/active range of motion, decreased sensation, neck pain, or weakness/numbness (2F/33). Imaging of the claimant's lumbar spine on February 20, 2024, revealed lumbosacral arthritis (transitional segmentation, probable chronic spondylolysis); no acute process; and normal alignment (4F/7). The claimant had 5/5 strength in all muscle groups (4F/2-3). The claimant's gait and station were normal (4F/3). Additionally, the claimant had normal range of motion throughout the spine (4F/4-6).

The claimant has a history of Crohn's disease (2F/7) and ulcerative colitis (4F/8). The claimant is status-post large intestine removal in 2009 and has an ileostomy (4F/8). The claimant reported regular flareups consisting of stomach cramps, fatigue, and anorexia (4F/8). The claimant had an ileostomy in the right lower quadrant (4F/9). The claimant's abdomen was soft, nontender, and nondistended, with no hepatomegaly, splenomegaly, masses, or bruits (4F/9). There was no erythema noted on examination (2F/8).

This evidence supports physical functional limitations, but not to the extent alleged.

*Allegation Analysis*

After careful consideration, I find that the claimant's allegations are not entirely consistent with the evidence of record. While the claimant has a medical history of Crohn's disease and ulcerative colitis with an ileostomy (6F/3), the more complete medical record does not support finding that the claimant has limitations beyond the above residual functional capacity assessment. The record does not contain examination findings or treatment notes consistent with the loss of strength, range of motion, sensation, reflexes, or coordination that would support a disabling degree of physical limitation. The claimant's physical examination findings were generally unremarkable (2F/8; 4F/4-6, 9). The medical evidence, even with a consideration of limitations from pain, does not support a greater degree of limitation beyond the above residual functional capacity assessment.

In sum, the claimant's alleged physical functional limitations are not entirely consistent with the claimant's reported daily functioning, the

> examination findings of record, and the persuasive portions of the medical opinions. Nonetheless, the above evidence supports that the claimant has experienced the degree of limitation reflected in the residual functional capacity assessment above.

(Tr. 23-24).

As this passage demonstrates, while the ALJ cited to the SSR 16-3p factors, he did not actually analyze any of those factors. Instead, the ALJ cited exclusively to examination findings and other objective medical evidence before concluding that Mr. Cage's statements were not entirely consistent with the record as a whole. Thus, the ALJ "did precisely what the applicable regulation says [he] may not: 'reject [Mr. Cage's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability work solely because the available objective medical evidence does not substantiate [Mr. Cage's] statements." *Gardner v. Comm'r of Soc. Sec.*, No. 1:16 CV 1839, 2017 WL 3923127, at *9 (N.D. Ohio Sept. 7, 2017) (emphasis omitted) (quoting 20 C.F.R. § 404.1529(c)(2)).

It is true that a reviewing court reads an ALJ's decision as a whole. *See Taylor v. Kijakazi*, No. 1:20-cv-01121, 2021 WL 4477865, *8 (N.D. Ohio Sept. 30, 2021). But "reading the ALJ's decision as a whole does not shed any additional light on the ALJ's reasoning" with respect to the SSR 16-3p factors. *Thomas v. Comm'r of Soc. Sec.*, No. 1:20-cv-1659, 2021 WL 4926076, at *8 (N.D. Ohio Sept. 29, 2021), *report and recommendation adopted*, 2021 WL 4914184 (N.D. Ohio Oct. 20, 2021). Instead, the ALJ merely summarized some of Mr. Cage's testimony without explaining how the SSR 16-3p factors bore on his evaluation of that testimony. (Tr. 22). As a result, remand is required. *See Gardner*, 2017 WL 3923127, at *10 (remanding case and noting that "courts in the Northern District of Ohio have held [reliance solely on objective medical evidence] to be reversible error") (citing cases); *Acosta Padilla*, 2018 WL 7079491, at *7 (remanding case where "[a] review of the ALJ's credibility assessment here does not reflect consideration of any of the seven factors that an ALJ *must* consider in addition to the medical

evidence when assessing credibility . . . ."); *Thomas*, 2021 WL 4926076, at *8 (remanding case where ALJ "never identified any specific inconsistencies between the evidence and [claimant's] statements" beyond summarizing medical evidence and made only "passing reference" to SSR 16-3p factors "without any discussion – express or implied – of which factors were implicated by the evidence").

The Commissioner argues that the ALJ actually did consider several of the SSR 16-3p factors in his decision, However, the Commissioner's argument is unpersuasive and reads more into the decision than the ALJ's analysis can fairly support. The Commissioner argues, for example, that the ALJ considered Mr. Cage's activities of daily living because the ALJ's summary of Mr. Cage's testimony included the statement that Mr. Cage reported moderate difficulty dressing, bathing, and shaving. (Tr. 22). At no point in the decision, however, did the ALJ actually analyze that testimony or explain how Mr. Cage's reported activities of daily living supported the RFC or the ALJ's evaluation of Mr. Cage's subjective symptom reports.

Similarly, the Commissioner argues that the ALJ discussed Mr. Cage's medication history because the ALJ cited to the February 2024 consultative examination, which noted that Mr. Cage was not on medication. (Tr. 24). However, the ALJ did not cite the consultative examination for that proposition, and a Court cannot engage in post hoc rationalizations for the ALJ's decision. *See Hawker v. Comm'r of Soc. Sec.*, No. 1:25-cv-920, 2025 WL 2711418, at *5 (N.D. Ohio Sept. 23, 2025) (noting that post hoc rationalizing "is not permitted"); *Renfrow v. Comm'r of Soc. Sec. Admin.*, No. 3:24-CV-00946-JJH, 2024 WL 5158962, at *10 (N.D. Ohio Dec. 18, 2024), *report and recommendation adopted*, 2025 WL 959528 (N.D. Ohio Mar. 31, 2025) ("while the Commissioner offers an explanation for that determination, the ALJ did not include such an explanation in the decision; therefore, this constitutes impermissible *post-hoc* rationalization").

Finally, the Commissioner argues that the Court should affirm the Commissioner's final

decision because the opinions of the state agency medical consultants constitute substantial evidence supporting the ALJ's RFC determination. However, "even if the RFC determination is supported by substantial evidence, the ALJ's credibility finding can still be error" where the ALJ "failed to comply with applicable procedural requirements when performing [his] analysis thereof." *Gardner*, 2017 WL 3923127, at *10. Thus, while the Commissioner may be correct that substantial evidence ultimately will support the ALJ's RFC determination, remand is required so that the ALJ can apply proper legal standards when evaluating Mr. Cage's subjective symptom reports.

## VI. CONCLUSION

Based on the foregoing, the Court REVERSES the Commissioner's final decision denying Mr. Cage's applications for DIB and SSI and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

Dated: August 31, 2026

*<u>/s Jennifer Dowdell Armstrong</u>*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge